IN THE UNITED STATES DISCRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SILVIA PORTILLO, ERIK RIVERA, ALMA LOPEZ, ROCIO GARCIA, ALEJANDRO SANDOVAL, JOSE HERNANDEZ, JOAQUIN GARCIA, and all others similarly situated, <br>     Plaintiffs, <br><br> v. <br><br> DISTRIBUTION PROS and EDWARD MARTINEZ <br><br>     Defendants. | <br><br><br><br><br><br><br> No. <br><br><br> Judge <br><br><br><br> Plaintiffs demand Trial by Jury |

**COMPLAINT**

    Plaintiffs, through their counsel, Will Bloom and Deanne Medina of COMMUNITY ACTIVISM LAW ALLIANCE, seek redress against Defendants DISTRIBUTION PROS and EDWARD MARTINEZ, for violations of the Fair Labor Standards Act, the Illinois Minimum Wage Law Act, the Illinois Wage Payment and Collection Act, the Cook County Minimum Wage Ordinance, the Chicago Minimum Wage Ordinance, and the Chicago Paid Sick Leave Ordinance, and state as follows:

**Introduction**

Distribution Pros, its owner Edward Martinez, and its management are responsible for massive and systemic wage theft. They have misclassified the named plaintiffs and others

1

similarly situated as independent contractors, despite them being employees under all applicable statutes. Under cover of this misclassification, they have refused to pay Plaintiffs minimum wage and overtime, have made unlawful deductions from their paychecks, and have even retaliated against one plaintiff for organizing with her coworkers to address these issues. Plaintiffs now bring this lawsuit to recover their unpaid wages and other damages for Defendants' violation of state and federal law.

**Parties**

1. Plaintiff Silvia Portillo was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

2. Plaintiff Erik Rivera was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

3. Plaintiff Alma Lopez was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

4. Plaintiff Rocio Garcia was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

5. Plaintiff Alejandro Sandoval was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

6. Plaintiff Jose Hernandez was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

7. Plaintiff Joaquin Garcia was, for all times relevant, an employee of the Defendants and a resident of the state of Illinois.

8. Defendant Distribution Pros is an Illinois corporation operating a newspaper distribution business in Chicago, Illinois.

9. Defendant Edward Martinez was, for all times relevant, an employer of Plaintiffs and a resident of the state of Illinois.

10. Upon information and belief, the annual gross sales of Defendants are in excess of $500,000.00 per year.

11. During all relevant times, Plaintiffs were employees of Defendants within the definition of §3(e) of the FLSA, 29 U.S.C. §203(e), §3(d) of the IMWL, 820 ILCS 105/3(d), and §2 of the IWPCA, 820 ILCS 115/2, and covered employees of Defendants within the definition of §42-12 of the Cook County Code and §1-24-010 of the Municipal Code of Chicago.

12. During all relevant times, Defendants were employers of Plaintiffs within the definitions of §3(a),(d) of the FLSA, 29 U.S.C. §203(a),(d), §3(c) of the IMWL, 820 ILCS 105/3(c), §2 of the IWPCA, 820 ILCS 115/2, §42-12 of the Cook County Code, and §1-24-010 of the Municipal Code of Chicago, were at those times an "enterprise engaged in commerce or in the production of goods for commerce" within the definition of §3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1) and were at all times relevant doing business in the city of Chicago.

**Jurisdiction and Venue**

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

14. Venue is proper pursuant to 28 U.S.C. §1391(b), as a substantial part of the events giving rise to this action occurred within this district, and Defendants are located, reside, or do

business in this district. Venue is also proper pursuant to 28 U.S.C. §1391(c) as Defendant Distribution Pros is subject to personal jurisdiction in the state of Illinois.

**Factual Allegations**

*Distribution Pros*

15. Defendant Distribution Pros distributes copies of newspapers to subscribers throughout Chicago.
16. Distribution Pros is owned by Defendant Edward Martinez
17. They have contracts with several newspapers, including the Chicago Tribune.
18. They hire employees to distribute these newspapers daily.
19. At any one time, Defendants employs approximately 80 to 90 people.
20. While Defendants claim these employees are independent contractors, they are employees under all applicable laws.
21. Defendants assigned the routes that Plaintiffs were to deliver to, without any significant input from Plaintiffs.
22. Plaintiffs were paid based on how many newspapers they delivered, though because Defendants employer assigned the routes, Plaintiffs had no control over how many newspapers they delivered.

*Silvia Portillo*

23. Silvia Portillo began working for Defendants on December 26, 2014, and worked there until April 1, 2018.
24. She delivered papers.
25. She worked every day.

26. She would work approximately three hours each day Monday through Saturday, and approximately four and a half hours on Sunday.

27. She was paid a base rate of approximately $180 per week.

28. On multiple occasions, Ms. Portillo had deductions made from her paycheck without her consent.

29. At least once a year, Defendants would make a deduction from Ms. Portillo's paycheck for "taxes," despite the fact that Defendants claimed she was an independent contractor and reported her income on a 1099.

30. This amount varied year to year, but the most recent time this deduction was taken, Defendants took $100.

31. Defendants would also deduct money from Ms. Portillo's paycheck when she called off sick. In her next paycheck, there would be money missing for days that she had, in fact, worked.

32. In March of 2018, Ms. Portillo reached out to Arise Chicago, a worker center, in an effort to help organize her coworkers around the gross mistreatment she and her coworkers faced, including their misclassification as independent contractors and their subsequent underpayment in various forms, such as the various unlawful deductions Defendants made from their paychecks.

33. She was seeking ways to address this issue, including but not limited to filing a lawsuit.

34. On March 30, 2018, she convened a meeting with several of her coworkers and an organizer from Arise.

35. A photo taken at this meeting, in which Ms. Portillo was clearly visible and the setting was recognizable as her home, was posted publicly on Facebook on March 31.

36. On the morning of April 1, she was fired from her job.

37. Upon information and belief, her termination was a result of her efforts to address workplace issues including violations of federal, state, and local wage and hour laws.

*Erik Rivera*

38. Erik Rivera began working for the Defendants in February 2014 and has continued to work there.

39. He delivers papers.

40. He works for Defendants every day.

41. He works for 3 hours in the morning Monday through Saturday, and five and a half hours Sunday morning delivering papers.

42. In addition, he works 2 to 3 hours each Monday afternoon bagging neighborhood papers for delivery on Tuesday morning.

43. He was paid a base rate of approximately $220 a week.

44. On multiple occasions, Mr. Rivera had multiple deductions taken from his paycheck without his consent.

45. At least once a year, Defendants would make a deduction from a weekly paycheck for "taxes," even though Mr. Rivera claimed he was an independent contractor and reported his income on a 1099.

46. While the amount varied from year to year, the most recent year, Defendants deducted $200.

47. Defendants would also deduct money from Mr. Rivera's paycheck when he called off sick. In his next paycheck, there would be money missing for days that he had, in fact, worked.

*Alma Lopez*

48. Alma Lopez worked for Defendants from June 2017 until December 2017.

49. She delivered papers.

50. She worked for Defendants every day.

51. She worked 5 hours each day Monday through Saturday, and 6 hours on Sunday.

52. She would be paid about $250 a week.

53. She experienced deductions from her paycheck when she would call off sick.

54. One at least one occasion, during a week in which she had called out sick, she had around $60 taken from her paycheck.

55. When she asked her supervisor about why there was money missing, she was told they took it because she had called in sick.

56. In December 2017, Ms. Lopez informed Defendants of her intention to quit, and gave them 2 weeks' notice. They instead told her to leave then and not come back.

57. Defendants never paid Ms. Lopez her final paycheck.

*Rocio Garcia*

58. Rocio Garcia started working for Defendants on June 22, 2016, and she still works there.

59. She delivers papers.

60. She works for Defendants every day.

61. On Mondays and Tuesdays, she works 5 hours.

62. On Wednesdays, Thursdays, Fridays, and Saturdays, she works 3 hours.

63. On Sundays, she works four and a half hours.

64. Ms. Garcia makes approximately $260 weekly.

65. Like her coworkers mentioned above, she had money deducted from her paycheck for calling off sick.

*Alejandro Sandoval*

66. Alejandro Sandoval began working for Defendants on December 21, 2009.

67. He still works for Defendants.

68. He delivers papers.

69. He works for Defendants every day of the week.

70. He works approximately 24 hours a week.

71. He makes approximately $162 a week.

72. He has had deductions taken from his paycheck for calling off from work.

*Jose Moises Hernandez*

73. Jose Moises Hernandez worked for Defendants from July of 2009 until the end of January 2016.

74. He delivered papers.

75. He worked for Defendants every day of the week.

76. He would work 3 hours each day on Mondays through Saturday.

77. He would work 4 and a half hours on Sundays.

78. When he first began working for Defendants, his weekly paycheck was approximately $300. As time went on, however, his paycheck went down, despite the fact that there were no changes in his hours.

79. By the end of his time there, he was being paid $150 a week.

80. At least once a year, Defendants would make a deduction from a weekly paycheck for "taxes," even though Mr. Hernandez claimed he was an independent contractor and paid him on a 1099 and without his prior consent.

81. Mr. Hernandez also had deductions taken from his paycheck as punishment for calling off from work.

*Joaquin Garcia*

82. Joaquin Garcia began working for Defendants on December 24, 2013.

83. He is still working for Defendants.

84. Mr. Garcia delivers newspapers.

85. He works for Defendants every day of the week.

86. He works approximately 26 hours a week.

87. He makes approximately $340 a week.

88. Mr. Garcia has had deductions taken from his pay check several times, for a variety of reasons and without his prior consent.

## Class and Collective Allegations

89. Plaintiffs bring their FLSA claims as an opt-in collective action on behalf of all hourly employees of Defendants in the State of Illinois within the past three years preceding this lawsuit to the day of trial and elect to opt-in to this action pursuant to 29 U.S.C. § 216(b) and who had deductions taken from their paycheck such that their effective hourly wage for a given pay period was below $7.25 an hour.

90. Plaintiffs and other similarly situated employees were not exempt from the minimum wage.

91. At all times material to this Complaint, Defendants failed to comply with the FLSA and state, county, and municipal wage laws in that Plaintiffs and other similarly situated employees performed work for Defendants and were not compensated at an effective hourly rate at or above $7.25 per hour.

**COUNT I**
**Unlawful Deductions for "Tax Purposes" under the Fair Labor Standards Act ("FLSA") on behalf of an all Plaintiffs and potential class members**

92. At various times alleged above, Defendants withheld deductions from the paychecks of Plaintiffs on the justification that they were to pay for "taxes" and without their prior consent.

93. Defendants classified Plaintiffs as "independent contractors" and reported their income on 1099s, meaning that Defendants was not paying payroll tax, nor were they entitled to withhold any payroll tax from Plaintiffs.

94. Upon information and belief, Defendants' policy of making deductions from employees' paychecks for "taxes" was a workplace-wide policy, affecting all employees who delivered newspapers.

95. For Plaintiffs and those similarly situated, these deductions meant that their effective hourly payrate was less than $7.25 per hour, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §206(a)(1)(C).

96. Defendants' violations of FLSA were willful.

97. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

98. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

99. Due to Defendants' FLSA violations, Plaintiffs allege on behalf of the members of the proposed class of non-management employees that they have suffered damages and are entitled to recover from Defendants the unpaid minimum wage compensation, and an additional amount equal as liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b) and to order the Defendants to produce all records of all hours worked by Plaintiffs and the proposed class of non-management employees of all compensation received by them for the time period from 2015 to the present.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 29 U.S.C. §216(b):

   a. Certification of this case as a collective action pursuant to 29 U.S.C. §216(b)
   b. All unpaid minimum wages owed to plaintiffs;
   c. Liquidated damages in an equal amount;
   d. Attorneys' fees;
   e. All other relief this court may deem just and proper.

## COUNT II
### Retaliation under FLSA on behalf of Plaintiff Portillo

100. Plaintiffs restate and reallege all previous paragraphs.

101. As alleged above, Plaintiff Portillo organized her coworkers and contacted Arise Chicago with the goal of addressing the various violations of employment law she and her coworkers suffered, including violations of FLSA.

102. This organizing effort was a key step that led to the initiation of this lawsuit.

103. Defendants terminated Plaintiff Portillo shortly thereafter.

104. Upon information and belief, Defendants fired Plaintiff Portillo because she contacted Arise Chicago and organized a meeting with her coworkers and organizers from Arise.

105. Defendants' actions violated FLSA's anti-retaliation provision, 29 U.S.C. §215(a)(3).

106. Defendants' violation was willful.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 29 U.S.C. §216(b):

   a. Reinstatement of Plaintiff Portillo to her previous position;

   b. Payment of all lost wages since her termination plus an equal amount in liquidated damages;

   c. A public apology from Defendants, delivered orally to Plaintiff Portillo in front of a meeting of Defendants' entire workforce;

   d. Regular, public announcements and permanent notice of employees' rights at work under state and federal law, including but not limited to their rights under FLSA, the Illinois Minimum Wage Law ("IMWL"), the Cook County Minimum Wage Ordinance ("CCMWO"), The Chicago Minimum Wage Ordinance ("CMWO"), the National Labor Relations Act ("NLRA"), and the Family Medical Leave Act ("FMLA").

   e. Attorneys' fees;

   f. All other relief this court may deem just and proper.

## COUNT III
**Unlawful Deductions for "Tax Purposes" under the Illinois Wage Payment and Collections Act ("IWPCA") on behalf of all Plaintiffs and potential class members**

107. Plaintiffs restate and reallege all previous paragraphs.

108. At various times alleged above, Defendants withheld payment from Plaintiffs and those similarly situated with the justification that this withholding was for "tax" reasons and without their prior consent.

109. They made these deductions despite the fact that Defendants misclassified Plaintiffs and those similarly situated as independent contractors and reported their income on a Form 1099.

110. Defendants' actions were not lawful deductions pursuant to 820 ILCS 115/9.

111. Defendants' failure to pay Plaintiffs and those similarly situated wages owed violates 820 ILCS 115/4.

112. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 820 ILCS 115/14(a):

   a. All unpaid wages owed to Plaintiffs and those similarly situated;

   b. Liquidated damages to be calculated pursuant to 820 ILCS 115/14;

   c. Attorneys' fees;

   d. All other relief this court may deem just and proper.

## COUNT IV
**Unlawful Retaliatory Deductions under the IWPCA
on behalf of all Plaintiffs and potential class members**

113. Plaintiffs restate and reallege all previous paragraphs.

114. At various times alleged above, Defendants withheld payment from Plaintiffs and those similarly situated in retaliation for those employees calling off sick or otherwise calling off work on a given day without their prior consent.

115. Defendants' actions were not lawful deductions pursuant to 820 ILCS 115/9.

116. Defendants' failure to pay Plaintiffs and those similarly situated wages owed violates 820 ILCS 115/4.

117. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 820 ILCS 115/14(a):

 a. All unpaid wages owed to Plaintiffs and those similarly situated;

 b. Liquidated damages to be calculated pursuant to 820 ILCS 115/14;

 c. Attorneys' fees;

 d. All other relief this court may deem just and proper.

### COUNT V
### Unlawful Deductions for Customer Complaints under the IWPCA
### on behalf of all Plaintiffs and potential class members

118. Plaintiffs restate and reallege all previous paragraphs.

119. At various times alleged above, Defendants withheld payment from Plaintiffs and those similarly situated which were justified as punishment for various customer complaints and did so without their consent.

120. Defendants' actions were not lawful deductions pursuant to 820 ILCS 115/9.

121. Defendants' failure to pay Plaintiffs and those similarly situated wages owed violates 820 ILCS 115/4.

122. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 820 ILCS 115/14(a):

    a. All unpaid wages owed to Plaintiffs and those similarly situated;

    b. Liquidated damages to be calculated pursuant to 820 ILCS 115/14;

    c. Attorneys' fees;

    d. All other relief this court may deem just and proper.

## COUNT VI
### Unlawful Withholding of Final Paycheck under the IWPCA
### On behalf of Plaintiff Lopez

123. Plaintiffs restate and reallege all previous paragraphs.

124. As alleged above, Defendants never paid Ms. Lopez her final paycheck.

125. Defendants' failure to pay Plaintiff Lopez her final paycheck violates 820 ILCS 115/4.

126. As a result of these violations, Plaintiff Lopez has suffered in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 820 ILCS 115/14(a):

    a. All unpaid wages owed to Plaintiff Lopez;

    b. Liquidated damages to be calculated pursuant to 820 ILCS 115/14;

    c. Attorneys' fees;

    d. All other relief this court may deem just and proper.

## COUNT VII
### Unlawful Withholding of Christmas Tips under the IWPCA (Christmas)
### On behalf of all Plaintiffs and potential class members

127. Plaintiffs restate and reallege all previous paragraphs.

128. At various times alleged above, Defendants withheld payment from Plaintiffs and those similarly situated by taking Christmas tips left for employees by customers without their prior consent.

129. Defendants' actions were not lawful deductions pursuant to 820 ILCS 115/9.

130. Defendants' failure to pay Plaintiffs and those similarly situated wages owed violates 820 ILCS 115/4.

131. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 820 ILCS 115/14(a):

    a. All unpaid wages owed to Plaintiffs and those similarly situated;

    b. Liquidated damages to be calculated pursuant to 820 ILCS 115/14;

    c. Attorneys' fees;

    d. All other relief this court may deem just and proper.

## COUNT VIII
### Violations of the Illinois Minimum Wage Law ("IMWL")
### On behalf of all Plaintiffs and potential class members

132. Plaintiffs restate and reallege all previous paragraphs.

133. At all times alleged above, Defendants misclassified Plaintiffs and those similarly situated as independent contractors.

134. This misclassification allowed them to justify paying less than $8.25 per hour.

135. Defendants' actions violated the IMWL, 820 ILCS 105/4(a)(1).

136. Defendants' violations were willful.

137. As a result of Defendants' actions, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to 820 ILCS 105/12(a):

    a. All unpaid wages owed to Plaintiffs and those similarly situated;

    b. Liquidated damages to be calculated at trial;

    c. Attorneys' fees;

    d. All other relief that this court may deem just and proper.

## COUNT IX
### Violations of the Cook County Minimum Wage Ordinance ("CCMWO")
### On behalf of all Plaintiffs and potential class members

138. Plaintiffs restate and reallege all previous paragraphs.

139. At all times alleged above, Defendants misclassified Plaintiffs and those similarly situated as independent contractors.

140. This misclassification allowed them to justify paying less than $10 per hour at all times after July 1, 2017 and less than $11 per hours at all times after July 1, 2018.

141. Defendants' actions violated the CCMWO, Cook County Code §42-13.

142. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to Cook County Code § 44-22:

    a. All unpaid wages owed to plaintiffs;

    b. Liquidated damages in twice that amount;

    c. Attorneys' fees;

    d. All other relief this court may deem just and proper.

### COUNT X
### Violations of the Chicago Minimum Wage Ordinance ("CMWO")
### On behalf of all Plaintiffs and potential class members

143. Plaintiffs restate and reallege all previous paragraphs.

144. At all times alleged above, Defendants misclassified Plaintiffs and those similarly situated as independent contractors.

145. This misclassification allowed them to justify paying less than $10.50 per hour at all times after July 1, 2016, less than $11 per hour at all times after July 1, 2017, and less than $12 per hour at all times after July 1, 2018.

146. Defendants' actions violated the CMWO, Municipal Code of Chicago §1-24-020.

147. As a result of these violations, Plaintiffs and those similarly situated suffered damages in the form of lost wages.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to Municipal Code of Chicago §1-24-110:

    a. All unpaid wages owed to plaintiffs;

    b. Liquidated damages in twice that amount;

    c. Attorneys' fees;

    d. All other relief this court may deem just and proper.

### COUNT XI
### Violations of the Chicago Paid Sick Leave Ordinance ("CPSLO")
### On behalf of all Plaintiffs and potential class members

148. Plaintiffs restate and reallege all previous paragraphs.

149. As alleged above, Plaintiffs are covered employees under the meaning of §1-24-010 of the Municipal Code of Chicago.

150. As such, they are entitled to accrue and use paid sick leave under §1-24-045 of the Municipal Code of Chicago.

151. Plaintiffs and those similarly situated worked in Chicago for Defendants after July 1, 2017, and therefore had begun accruing paid sick leave.

152. At various times alleged above, Plaintiffs and those similarly situated called in to work to say that they were sick and would be unable to come to work.

153. Defendants did not allow Plaintiffs to use their accrued paid sick leave when they called in sick, and in fact penalized Plaintiffs for taking time off by deducting money from their paychecks.

154. This constituted a violation of the CPSLO.

THEREFORE, Plaintiffs make the following prayer for relief pursuant to Municipal Code of Chicago §1-24-110:

a. Three times the full amount of unpaid sick leave denied by this violation;

b. Interest on that amount to be calculated at the prevailing rate;

c. Costs and attorneys' fees;

d. All other relief this court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Respectfully submitted,
/s/Will Bloom
Plaintiffs' Attorney

Will Bloom
Community Activism Law Alliance
17 North State Street, Suite 1380
Chicago, IL 60602
(312) 999-0056
will@calachicago.org
Atty No. 6326599

Deanne S. Medina
Community Activism Law Alliance
17 N. State Street, Suite 1380
Chicago, IL 60602
(312) 999-0056
deanne@calchicago.org
Atty No. 6273485